### J. F. ELDER v. STATE.

No. 2046.   Decided December 11, 1912.

**1.—Slandering Female—Evidence.**

Upon trial of slandering a female, where the record disclosed that the alleged female was found in a compromising position with a witness, defendant should have been permitted to show that this witness made preparations for sexual intercourse.

**2.—Slandering Female—Evidence—Flight.**

Where, upon trial of slandering a female, the defendant was seeking to use the flight of the man whom he contended had been intimate with defendant's wife, there was no error in permitting that party to testify as to the reason of his flight.

**3.—Same—Evidence—Circumstances.**

　Where, upon trial of slandering a female, the State's theory was that the defendant's declarations were wholly untrue and slanderous and were made for the purpose of obtaining a divorce from his wife that he might marry another, there was no error in admitting testimony as to defendant's attentions to this other woman just prior to the occasion of his alleged slander.

**4.—Same—Evidence—Reputation for Chastity.**

　Where, upon trial for slandering a female, several young men had testified to damaging facts concerning the reputation of prosecutrix for chastity, it was reversible error to admit hearsay statements to affect the testimony of these young men without individuating them.

**5.—Same—Charge of Court—Falsity of Statement.**

　Where, upon trial of slandering a female, the question as to the falsity of the alleged slander became an issue under the evidence, it was error to refuse a special charge covering this phase of the case.

　Appeal from the County Court of Taylor. Tried below before the Hon. Thomas A. Bledsoe.

　Appeal from a conviction of slandering a female; penalty, a fine of $300 and thirty days confinement in the county jail.

　The opinion states the case.

　*Ben L. Cox*, for appellant.—Cited cases in opinion.

　*C. E. Lane*, Assistant Attorney-General, for the State.—On question of court's charge: Manning v. State, 37 Texas Crim. Rep., 180; Ballew v. State, 36 id, 98 Dobbs v. State, 55 id, 483.

　HARPER, JUDGE.—In this case appellant was prosecuted and convicted of slandering his wife, in that he charged her with a lack of chastity, and his punishment assessed at a fine of $300 and thirty days imprisonment in the county jail.

　The facts are of that nature that we do not think any good purpose could be accomplished by stating them, they in some respects being rather obscene. If appellant wrongfully made the charges alleged, he would richly deserve the punishment fixed by the jury. Appellant did not deny using the language alleged, but hinged his defense on the proposition that what he stated to Mr. Browning was true.

　The record discloses that Charley Skillern, whom appellant charged with having sexual intercourse with his wife, was attending the telephone at night, the wife of appellant sleeping in an adjoining room. On the night in question appellant pretended to leave the town on a night train, and shortly thereafter he says he placed a ladder against the walls of the building, in which the telephone office was situated, and climbing up the ladder, he claims he saw Skillern and his wife in a very compromising position. Skillern fled, leaving his hat, tie, and some other wearing apparel. This Skillern explains in a way entirely consistent with his and Mrs. Elder's innocence, but while Skillern was testifying, and while appellant was cross-examining him in re-

gard thereto, appellant propounded to Skillern the question: "If he (Skillern) had not that night purchased from Lee Rutherford some cundrums?" The State objected to the witness being permitted or required to answer this question, which objection was sustained, and appellant by proper bill shows he reserved an exception to the ruling of the court. Appellant offered to testify and introduce other testimony that on the night in question Skillern did purchase cundrums from Rutherford, but on objection being made by the State, the court refused to permit him to introduce such testimony. As we have stated, this case was tried wholly on the issue of whether or not the statement was true, and as the allegation was that appellant had stated "he had caught Skillern in bed with his (appellant's) wife,"—and, exhibiting Skillern's hat and collar, said, "this is what I got out of that f-k-g scrape last night," we are of the opinion that this testimony about the purchase of cundrums that night should have been admitted. It would be a circumstance tending to show preparation on Skillern's part to have intercourse with some person, and was a legitimate circumstance to have been proven under the facts in this case.

The court did not err in permitting Skillern to testify to a statement made to him by appellant's wife, as this furnished a reason for his flight, consistent with his and her innocence, and as appellant was seeking to use this flight as an incriminating circumstance, it was proper to permit it to be explained.

The State's theory was that the allegations were wholly untrue and slanderous, and that it was an effort to manufacture testimony upon which appellant could obtain a divorce from his wife, that he might marry a Mrs. Moore. Under such circumstances we do not think the court erred in permitting witness to state, and defendant to be cross-examined, as to his attentions to Mrs. Moore just prior to this occasion, for if true, it might furnish such incentive as contended for by the State.

The court over the objection of defendant permitted the State to prove by the witness Browning, "that a boy, whose name he had forgotten, told him (Browning) that the boys around Trent had it in for Mrs. Elder because she would not permit them to hang around the telephone office." This was hearsay and inadmissible, and under the circumstances of the case peculiarly harmful. Several young men had testified to facts damaging to Mrs. Elder's reputation for chastity, and whose testimony would tend strongly to support the contention of appellant. These young men denied entertaining any ill-will toward Mrs. Elder, and no testimony was introduced showing that they did entertain such feelings, unless it be the hearsay statement testified to by Mr. Browning. Mr. Browning was unable to give the name of his informant, and he did not claim that the person making the statement individuated or had any reference to the young men who testified for appellant in this case, and yet this hearsay statement was introduced to affect their testimony and render it less credible.

The appellant requested the court to charge the jury: "You are instructed that if you should find from the evidence that the defendant made the statements that he is alleged to have made to the witness Browning, you are instructed that before you could convict the defendant, it would be necessary for you to further find beyond a reasonable doubt that said statements were false and that same were wantonly or maliciously made by the defendant." As before stated, that appellant used the language alleged was not a contested issue, and under the peculiar facts of this case we think this charge should have been given. It correctly called the attention of the jury to the material issues in the case—whether or not the allegation was true, and whether or not it was wantonly or maliciously made. Whether the statement was false or true, appellant, according to the State's testimony, saw his wife and Skillern in a position that would arouse suspicion in almost any man. Skillern testified: "I saw Mr. Elder at the depot and I also saw Tom McLeod and Charlie Bishop. I went back up to the telephone office from the station and pulled off my hat, collar and tie and shoes and was preparing to go to bed. Mrs. Elder had been in the telephone office prior to this time and she had been sitting on the opposite side of the bed to me. That is, she was sitting on the side next to the door that opens into the other room and I was sitting on the side of the bed toward the switchboard. Mr. Elder came up a ladder to the north window of the telephone office and stuck his head in at the window and says, 'God dam you, I have caught you.' I says to him, 'That is not the way to come in. Get down and come around to the door if you want to come in.' He went down the ladder and I started to the door to let him in and Mrs. Elder said to me, you had better get out of the telephone office because Frank is drinking and he might hurt you. Mr. Elder had gone down the ladder at this time and hadn't yet come up the steps to the door. I did get out of the telephone office by jumping down on the awning from the back window of the room where Mrs. Elder's things were, and I ran away." If while laboring under a false impression, if such be the fact, appellant made the remarks alleged, they were highly improper, yet in such state of case, the issue should be clearly presented as to whether it was maliciously and wantonly done. Stayton v. State, 46 Texas Crim Rep., 205; Tippens v. State, 403 S. W. Rep., 1000.

We do not deem it necessary to discuss the other questions presented in the motion for new trial, but on account of the above errors the judgment is reversed and the cause is remanded.

*Reversed and remanded.*